## MOORE v. SCOTT.

1. DEED OF TRUST—PARTIES—REMAINDERMEN.—When a deed of trust empowers the trustee to sell for reinvestment, with consent of life tenant, and at instance of creditors of life tenant, at suggestion of court of equity, it being alleged and not denied that the life tenant wished his interest applied to his debts, the trustees sells and *corpus* is held under investment for contingent remaindermen, interest being paid to creditors of life tenant, contingent remaindermen then *in esse* not having been made a party to the said creditors bill, the deed of the trustee so made carries to purchaser a fee simple title. *Mosely* v. *Hankinson,* 22 S. C., 323, *distinguished from this.*

2. JUDGE—VERDICT.—Where there is no dispute as to the evidence, Judge may direct verdict.

3. REHEARING refused.

Before GARY, J., Greenville, July, 1902.    Affirmed.

Action by Samuel L. Moore against James Scott.    From judgment for defendant, plaintiff appeals.

*Messrs. Carey, McCullough & McSwain,* for appellant, cite: *Is plaintiff bound by the judgment in Neal v. Sullivan?* 19 S. C., 323; 22 S. C., 323; 39 S. C., 131; 164 U. S., 480; 20 S. C., 71. *Trust cannot be executed until the happening of the contingency:* 53 S. C., 9; 29 S. C., 138; 31 S. C., 14; 4 Rich. Eq., 385; 36 S. C., 354. *Right of remainderman does not accrue until death of life tenant:* Rice Eq., 361; 2 Rich. Eq., 259; 16 S. C., 220; 25 S. C., 34, 519; 54 S. C., 394; 23 S. C., 502. *Court could not compel trustee to sell:* 12 Rich. Eq., 254; 11 Rich. Eq., 199; 31 S. C., 198; 2 Perry on Trusts, 30; 1 Id., 31, and sec. 248; 55 S. C., 131; 1 Rich. Eq., 329; 97 N. C., 137; 29 S. C., 278. *Deed by trustee is coram non judice:* 11 Ency., 878, 879; 140 U. S., 254; 31 S. C., 113; 23 S. C., 514; 2 Perry on Trusts, 2 ed., 508, 575; 15 Ency. P. & P., 592, 648; 22 Ency. P. & P., 64; 13 Rich. L., 178; 43 S. W. R., 788. *Deed recites that land was sold by and according to decree in chancery, and defendant cannot deny recitals of his deed:* 18 Ency., 936; 2 Perry on Trusts,

2 ed., sec. 511; 18 Mich., 42; 17 Am. R., 709; 46 Am. R., 593; 34 Am. R., 143; 194 U. S., 366; 60 Am. R., 770; 6 Pet., 598; 134 U. S., 590; 59 S. C., 498; 25 S. C., 522; 62 S. C., 489. *Neal v. Sullivan is neither res judicata nor stare decisis as to this case:* 17 S. C., 85; 53 S. C., 289; 3 Rich. Eq., 1; 2 Rich. Eq., 321; 9 Rich. Eq., 225; 56 S. C., 423; 62 S. C., 299; 23 Ency., 19.

*Messrs. T. Q. & A. H. Donaldson* and *Haynesworth, Parker & Patterson,* contra. The former cite: *As to the construction of the trust deed:* 35 S. C., 327; 25 S. C., 41; 29 S. C., 136; 32 S. C., 77; 61 S. C., 243; 2 Rich. Eq., 53. *The life tenant is presumed to have consented to the sale:* 30 S. C., 197.

The latter cite: *Where the trustee is authorized to sell, the only necessary parties in equity proceeding is himself and life tenant:* Perry on Trusts, sec. 508; Hill on Trustees, 499 and 495; 1 P. Will., 702; 4 Rich. Eq., 491; 9 S. C., 155; Perry on Trusts, secs. 517, 519, 784, 787; 36 S. C., 202; 1 Dan. Ch. Pl., 211; 60 S. C., 192. *Such sale may be regarded as an exercise of the power:* 22 S. C., 323; 38 S. C., 198; 23 S. C., 515. *Decision in Neal v. Sullivan is a binding rule of property as to this case:* 3 S. C., 497; 4 Rich. Eq., 490; 21 S. C., 527; 1 Wall., 175; 18 S. C., 355; 10 S. C., 317; 12 L. R. A., 856; 15 Ency., 1046; Black on Int. of Laws, 377.

The opinion was filed April 14th, 1903, and remittitur held up on petition for rehearing until

May 18, 1903. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. On the fifth day of June, 1853, Samuel Moore, of Greenville District, in this State, executed the following deed of trust to one Thomas J. Sullivan, of Laurens District, of this State, to wit:

"Know all men by these presents, That I, Samuel Moore,

of the District and State aforesaid, in consideration of the natural love and affection I entertain for my son, Hewlett Sullivan Moore, and upon the further consideration of ten dollars to me paid by Thomas J. Sullivan, of Laurens District and State aforesaid, have granted, bargained, sold, and released, and by these presents do grant, bargain, sell, and release, unto the said Thomas J. Sullivan, the lands, to wit: (Here follows a description of the property conveyed, including the land now in question.)    A certain tract of land situated in Greenville District immediately on the Augusta road, cut off the tract known as the Lick tract, containing two hundred acres more or less, adjoining lands belonging to the estate of Tully Boilling and others.

"To have and to hold all and singular the said premises before mentioned unto the said Thomas J. Sullivan, his heirs and assigns forever, and the said personalty unto the said Thomas J. Sullivan, his executors and administrators, both the said real and personal estate in trust nevertheless for the following uses and purposes hereinafter set forth and declared, to wit: to permit my son, Hewlett Sullivan Moore, to have the possession, use, and enjoyment of the said real and personal estate, including the increase of the female slaves during his natural life, reserving, however, to the trustee the title thereto, with the power of supervision and control, to be exercised whenever in his judgment it may be necessary for the protection of the said property, for the benefit of the *cestui qui trust,* and also full power and authority to sell or exchange all or any part of the said property and its increase by and with the consent of my said son, whenever in the discretion of the said trustee it shall be most for the benefit of my said son, and to reinvest the proceeds of such sale in other property that will better suit my said son.    The property so purchased or received in exchange to be held by the said trustee subject to the same power of exchange and sale, and upon the same trusts, uses, and limitations as the original property is subjected to by the provisions of this deed; and after the death of my said son, the said property

and its increase is to be so continued in trust for the posses-
sion, use, and enjoyment of such child or children as he may
leave surviving him, including the child or children of any
deceased child, who will take the portion the deceased parent
would be entitled to if living.  But if my said son, should
leave only one child, and no grand child, then the said prop-
erty and its increase is to be so continued in trust for the sole
possession, use, and enjoyment of such child.  Should, how-
ever, my said son die without leaving any child or grand
child, in that event the said trustee is empowered to execute
a valid title in fee simple for one third of said property and
its increase to such widow as he may leave surviving him,
and the remaining two thirds is to be continued in trust for
the possession, use, and enjoyment of my son, Dunklin De
Witt Moore, and my daughter, Mary Jane Moore, to be
equally partitioned between them, or between the survivor
of them and the child or children of the deceased brother or
sister, as the case may be; the child or children of such de-
ceased, taking the portion of such deceased parent.  Though
should the deceased brother or sister leave no child or child-
ren, in that event the whole of said property and its increase
is to be so continued in trust for the sole possession, use and
enjoyment of the surviving brother or sister as the case may
be.  Should, however, my said son, Hewlett Sullivan Moore,
die without leaving any child or children, grandchildren,
widow, or surviving brother or sister, or the child or children
of one or both of them, then the said trustee is to sell the
whole of the said property and its increase, and distribute
the proceeds thereof amongst the next living kin of my
present wife, as if it were her property, and she had died
intestate."  (Duly executed and probated.)

This deed was duly recorded in the office of the register
of mesne conveyance for Greenville District.  The trustee,
Thomas J. Sullivan, duly accepted said trust in writing.
The life tenant, Hewlett S. Moore, occupied, with his wife
and child, the present plaintiff, a dwelling house built on the
eighteen acres tract of land included in the trust deed, in the

then village of Laurens, S. C. However, from extravagant
habits and use of liquor, Hewlett S. Moore fell behind in
payment of his debts, and in the year 1857 he owed nearly
$6,000, and from a sense of mortification at his failure, he
left the State and made his home in the State of Georgia.
All the trust estate included in the deed of trust was taken
possession of by Thomas J. Sullivan, as trustee. In 1857, a
bill in equity was filed by Neal and others, as plaintiffs,
against Thomas J. Sullivan, as trustee, and Hewlett S.
Moore, as defendants. The bill recited the foregoing facts,
and alleged that the trustee would do nothing to pay the
claims of the creditors of the said Hewlett S. Moore,
notwithstanding he had taken possession of all the trust
property after the said Moore abandoned the State of South
Carolina; that all the property included in the life estate of
Hewlett S. Moore was liable to pay his debts, much of which
had been reduced to judgment, and for fees issued therein
and placed in the hands of the sheriff, who had returned
*nulla bona* thereon; that said Hewlett S. Moore wished, and
now wishes, that his property should be applied to the pay-
ment of his debts. The prayer of this bill was that such
Thomas J. Sullivan might account for any rents and profits
in his hands, and that the same, together with the life interest
of the said Moore in the corpus of said estate, be decreed to
be subject to the payment of the demands of the plaintiffs
and other creditors of the said Moore. The defendant,
Hewlett S. Moore, was served by publication, and no answer
being made, the usual order *pro confesso* was taken against
him. The defendant, T. J. Sullivan, as trustee, made a
vigorous defense in his answer; he denied having any funds
belonging to the life tenant in his hands, though he admitted
that he had taken possession of all the trust property; he
denied that the debts of these suing creditors were contracted
for the benefit of the trust estate of Moore; that he was in no
wise consulted or concerned in the contracting of these debts
of Hewlett S. Moore; he submitted that the trust estate was
not, and ought not, to be bound to pay the same; he denied

that such trust estate was liable to levy or sale on account thereof; and that when the trustee accepted his office under the deed, it was exclusively for the benefit of the beneficiaries in said deed provided and not for creditors or strangers. Creditors of· Hewlett S. Moore were called upon to prove their demands. Nearly $6,000 were so proved. Chancellor Dargan made a decree in favor of the plaintiff under said bill in equity, in which he held, *inter alia,* that the interest of Hewlett S. Moore in the trust estate was liable to the claims of his creditors; he ordered the commissioner in equity for Laurens District to sell the fee simple title in the several tracts·of land contained in the deed of trust, and that the eight slaves be hired out each year by the trustee, Thomas J. Sullivan; that the commissioner hold the proceeds of sale and the hire of negroes until the further order of Court; that the trustee enter into a bond with two good sureties, in a sum sufficient to protect the interest of the parties; that the commissioner report a scheme for the investment of the proceeds of sale and the amount for the hire of the eight negroes; "and for the distribution of the funds so that the creditors of Hewlett S. Moore receive the interest thereof on the principal preserved for the remaindermen mentiond in the deed—June 13, 1857." From this decree, Thomas J. Sullivan, as trustee, appealed, and one of the grounds of his appeal was that Chancellor Dargan had ordered a sale of the fee simple title to the lands in question. When this appeal was considered by the Court of Appeals in equity, so much of the Circuit decree which directed the commissioner in equity to sell the said lands was set aside and that question was sent back to the Circuit Court, with directions to take testimony as to whether the fee or life estate in said lands and negroes were concerned; but holding in the event of a sale, that the trustee and not the commissioners should sell the property and hold the proceeds, without any bond being required of the trustee. Much testimony was taken and a variety of opinions were expressed by the witnesses. It was shown that the 200 acres of land now in question was entirely

wooded land and no revenue therefrom, and its fee simple value was fixed at from $800 to $1,000. The cause then came on to be heard upon exceptions to the commissioner's report, accompanied by the testimony before Chancellor Wardlaw, who, by his decree, sustained the recommendation of the commissioner, that the fee simple title to the lands should be sold and the negroes hired from year to year, applying the income from the interest in the purchase money of the lands and the hire of the negroes *pro rata* to the claims of the creditors of Hewlett S. Moore. An appeal from Chancellor Wardlaw's decree was taken, but only as to matters connected with the claims of creditors. In an opinion delivered by Chancellor Dargan for the Court of Appeals in equity, the decree of Chancellor Wardlaw as to the sale of the fee simple title to the lands was affirmed. See *Neal* v. *Sullivan,* 10 Rich. Eq., 276—in which the Court said: "That the 'rights of those ultimately entitled as well as the rights of creditors,' and in a conflict between the two the attempt should be to reconcile the interests of both, and not to defeat entirely or greatly impair the interest of either; the claims of the former being express but contingent, and of the latter incidental but accruing through the immediate object of bounty." So the lands were sold by the trustee, and the 200 acres of land now under controversy were purchased by Mrs. Jane C. Moore, the grand-mother of the plaintiff. The following is the deed made by Thomas J. Sullivan, as trustee, to Mrs. Jane C. Moore:

"Know all men by these presents: That I, Thomas J. Sullivan, as trustee of Hewlett S. Moore, in pursuance of a decree of a Court of Equity, made in the case of H. S. Neal, assignee and others, against me and the said Hewlett S. Moore, in the Court of Equity in and for the District of Laurens and State aforesaid, after giving at least twenty one days public notice, did expose to sale at Lickville in Greenville District and said State, a certain tract of land situated in Greenville District immediately on the Augusta road, cut off of the tract known as the Lick tract, containing

19—66

two hundred acres more or less, adjoining lands belonging to the estate of Tully Bolling and others, and more particularly described in a deed of trust from Samuel Moore to me, bearing date, the first day of June, A. D. 1853, and at said sale on the 27th day of December, A. D. 1858, Jane C. Moore, being the highest bidder, for said tract of land, the same was knocked off to her at the price of three hundred dollars and the said Jane C. Moore, the purchaser,. secured the purchase money by bond. and security thereto, as the said decree directs, have in consideration of the premises, granted, bargained, sold and released, and by these presents, do grant, bargain, sell, and release, unto the said Jane C. Moore, the aforesaid tract of land. Together with all and singular, the rights, members, hereditaments, and appurtenances to the said premises belonging or in anywise incident or appertaining. To have and to hold all and singular the said premises before mentioned, unto the said Jane C. Moore, her heirs and assigns forever.

"Witness my hand and seal, this 17th day of November, in the year of our Lord, One thousand, Eight hundred and Sixty, and in the 85th year of the Independence of the United States of America.

                 "Thomas J. Sullivan, (Seal) Trustee."

(Properly executed.)

The same character of deed, to wit: one in fee simple, with full warranty, is that of every deed down to and including that of James Scott, the present defendant. The life tenant, Hewlett Sullivan Moore, died on the 6th day of March, 1902.

At the hearing before his Honor, Judge Ernest Gary, there was some oral testimony, more for the purpose of identification of plaintiff as son of Hewlett S. Moore, deceased, than anything else. All the documentary evidence referred to herein was before his Honor, Judge Gary, who directed the jury to find a verdict for the defendant. The Judge used this language:

"From the view I take of this case, it is a question of law

and not of fact. It is a rule of this Court, that where testimony is admitted—not disputed—that the Court can direct a verdict, as there is no testimony for the jury to pass upon. If the facts are admitted, or not denied, the Court can direct a conclusion. In this case, the testimony is documentary, and not disputed. It is not necessary that I should give you the history of the case, but I will simply make such remarks as I think necessary, giving my reasons for directing the verdict. It is a general rule of law, that title to real estate is never floating in the atmosphere. Now, my difficulty has been, 'where was it fixed?' Where was the title fixed and embraced in the deed which has been introduced in evidence? It is well that that portion of the deed which disposes of the title, should be held in mind. The habendum clause of the deed is as follows (which is set out in the deed *ante*). Now, from my construction of that deed, the title of that real estate was in the trustee. That is where it is fixed; and the testator says that even after the death of the life tenant, it is still to continue in trust—in the trustee. Now, in the interest of the life tenant and trustee, the Court of Equity for Laurens County made a certain decree, in which it was ordered that this property be sold. Having been sold under that order, the question now comes up, did the Court have authority, not having the grand-son, Samuel L. Moore, a party to the proceedings? That grand-son now comes in and claims that that order of sale is not binding upon him, as he was not made a party. If the title was in him, I would hold that before his rights could be divested, that he should be made a party to the cause. The title would be in him, and it would be futile to pass upon it unless he was made a party. Now, the object of that rule is this, in order that the real owner, the beneficiary, should be present and assert his rights. But the grantor expressly said in that deed that his grand-son, or his son, was not to represent the title. It was his wish and desire, expressed in the deed, that his trustee should hold that title and represent the interest of these parties, because even after the death of the life tenant, Hew-

lett Sullivan Moore, the trust was still to continue in the trustee and did not go to his grand-son, but remained in him. Now, it remaining in him, that title was before the Court of Equity, my construction, after mature deliberation, and much thought, is that the fee simple title was in the trustee.

"That view has been very much shaken by the arguments of the attorneys for the plaintiff, but in a comparatively recent case, in which our present Chief Justice delivered a very elaborate opinion, he uses this language: 'It may be said that the trustee who was vested with the fee in the legal estate, being before the Court, he could represent, and did represent, the interest of all the parties; and there is some countenance in this suggestion in the dictum of Chancellor Dargan, in *Willmon* v. *Holmes,* 4 Rich. Eq., at page 490-1; but I think a more correct view is taken by Chancellor Wardlaw, in *Moore* v. *Hood,* 9 Rich. Eq., at page 325, where he says: "The rule requiring beneficiaries to be parties where they are interested in the questions for adjudication is applicable, although the trustees have the legal title. For trustees are . not the real owners of the trust estate, and are rather agents of the beneficiaries for the execution of certain trusts and it is among their duties to require the real owners to be brought before the Court.' " Now, that looks like it is directly opposite to the conclusion which I have reached, but in looking into this case in which that language was used, I find that the trustee in that case did not have authority to sell, nor was the fee simple title in the trustee, as in the present case here, and the other language of the Chief Justice seems to qualify that expression and limit it to the cases where trustees were without authority to sell. He goes on to say: 'Any other view, it seems to me, would logically lead to the conclusion that the trustee might convey without any order of the Court. The very object of applying to the Court is to obtain authority for disposing of the interests of others, those who are entitled to such interests, must, if practicable, be made parties to any proceedings by which it is proposed to dispose of their interests.' Now, here there was

no necessity in the present case for the trustee to apply to the Court of Equity to sell, as in the case of *Moseley* v. *Hankinson,* cited by counsel, in which the title was not in the trustee. Therefore, my conclusion is that he had in his mind such estates as were given to trustees who had no authority by the trust deed to make a sale. Therefore, the case in which he delivered that opinion, being in that language, I construed his remarks to be applicable to estates where the trustee had no authority to sell or, in other words, where the fee simple title was not in the trustee. Here, the grantor has put his title in the trustee. He has said that the title must remain in the trustee even after the death of the life tenant. The trustee and life tenant were parties to the proceeding, and I am forced to the conclusion that the title was before the Court, and the decision of the Court affected that title, and is binding upon the interest of those represented in said proceedings. My construction of this deed is that the fee simple title was before the Court, and could be disposed of by its decree, and that is the reason I assign, directing you to find a verdict for the defendant in this case. Now, the Court having ordered a sale, and the sale having been made under that order of the Court, it carried with it the fee simple title. That is why, in my construction of the law, the plaintiff cannot prevail in this case.

"I take pleasure in stating that whichever way I decide, it will go to the Supreme Court, and if I have done injustice to any of the litigants, I am glad to know that it would there be corrected."

The jury found a verdict for defendant. After entry of judgment the plaintiff appealed to this Court to reverse said judgment and grant a new trial, on the following grounds:

"1. Error in holding that the land in dispute was sold by the Court of Equity for Laurens County, 'in the interest of the life tenant and trustee.' It being respectfully submitted that the record shows that the said land was sold in the interest of the creditors of Hewlett S. Moore, the life tenant.

"2. Error in holding that the grantor, Samuel Moore, by

his deed of trust to Thomas J. Sullivan, 'expressly said in that deed that his grand-son or his son was not to represent the title.' It being respectfully submitted that the said deed of trust clothed the said son or grand-son with the entire beneficial ownership.

"3. Error in holding, under the trust deed of Samuel Moore to Thomas J. Sullivan, trustee, that, 'after the death of the life tenant, Hewlett S. Moore, the trust was still to continue in the trustee, and did not go to his grand-son, but remained in him.' It being respectfully submitted that after the death of the life tenant, the trustee having no other duties to perform, the statute executed the trust in the contingent remainderman, the grand-son and plaintiff in this case.

"4. Error in holding that the legal title of the premises in dispute was before the Court of Equity in the case of *Neal* v. *Sullivan,* to such an extent as would authorize the Court to dispose of the said legal title in a proceeding to which the trustee and the life tenant alone were parties, the contingent remainderman, the plaintiff in this case, being *in esse* and within the jurisdiction of the Court.

"5. Error in concluding that in the case of *Moseley* v. *Hankinson,* 22 S. C., 323, the Court had in 'mind such estates as were given to trustees who had no authority by the trust deed to make a sale.' It being respectfully submitted that such authority cuts no figure in the case unless the trustee had exercised the same in the manner provided for in the deed of trust.

"6. Error in holding that in the case of *Moseley* v. *Hankinson,* 22 S. C., 323, the fee simple title was not in the trustee, as in the case at bar. It being respectfully submitted that the trustee in the case held the legal title for the purposes of performing the duties required by the deed of trust after the death of the life tenant, and for the purpose of preserving the contingent remainder therein created, and the Court in that case expressly decided to this effect. In

this connection, error in hereby distinguishing the case of *Moseley* v. *Hankinson* from the case at bar.

"7. Error in holding that the legal title in this case being in the trustee, and the trustee and life tenant being before the Court, the Court could dispose of the said title so as to defeat the rights of this plaintiff, the contingent remainderman, under the said deed, who are *in esse* and within the jurisdiction of the Court at the time the action in the case of *Neal* v. *Sullivan* was instituted.

"8. Error in holding in this case that the trustee represented the contingent remainderman, who was *in esse* and within the jurisdiction of the Court at the time the said action of *Neal* v. *Sullivan* was instituted. It being respectfully submitted that the said trustee was a mere agent for the real parties in interest, and not the beneficial owner.

"9. Error in not holding that under the deed of Samuel Moore to Thomas J. Sullivan, trustee, the plaintiff in this case, upon his birth took an interest in the said property, which interest was a valuable property right, and no Court could divest him of the same by any action or proceeding thereafter instituted without making him a party thereto.

"10. Error in not holding that to deprive one of his property by an action to which he was not a party, would be to deprive him of his property without due process of law.

"11. Error in holding, 'My construction of this deed is that the fee simple title was before the Court and could be disposed of by its decree, and that is the reason I assign directing you to find a verdict for the defendant in this case.' The undisputed testimony being that at the time the action of *Neal* v. *Sullivan* was instituted, the plaintiff, who was a contingent remainderman under the said deed, was *in esse* and within the jurisdiction of the Court, and was not made a party to the said proceeding.

"12. Error in holding, 'Now, the Court having ordered the sale, and the sale having been made under that order of the Court, it carried with it the fee simple title.' It being respectfully submitted that the said order of Court was bind-

ing only on the parties thereto and was not binding upon this plaintiff. It appearing that he was not a party to the said proceeding.

"13. Error in directing a verdict for the defendant. It appearing from the undisputed testimony that under the deed of Samuel Moore to Thomas J. Sullivan, trustee, the plaintiff in this action took an interest as contingent remainderman immediately upon his birth; that he could not be divested of this interest except by a judgment of the Court to which he was a party, or by an exercise by the trustee of the power contained in the deed; that it appearing that the said sale was made by the trustee not in the exercise of the power contained in the said deed, but as an officer or agent of the Court in a proceeding to which the plaintiff was no necessary party, and to which he was not a party, the deed of Thomas J. Sullivan under the said order in the said case passed only the life estate of the said Hewlett S. Moore, and the said Hewlett S. Moore having died, this plaintiff became entitled as remainderman to said property.

"14. Error in not holding that by the undisputed testimony the plaintiff had established the material allegations of his complaint, and the defendant having offered no testimony to rebut his title, was, therefore, entitled to a verdict.

"15. Error in not holding that under the cases of *Leroy* v. *Charleston*, 20 S. C., 71; *Moseley* v. *Hankinson*, 22 S. C., 323, and other cases reaffirming the doctrine therein declared, the plaintiff in this case was a necessary party to any proceeding by which it was sought to divest him of his interest in the said realty, and that no judgment of the Court, or sale of the said property thereunder by virtue of any proceeding to which he was not a party, could effect his interest."

1. There is no serious error, if any, pointed out in this exception in the Judge saying that the sale of this 200 acres of land was made in the interest of the life tenant and trustee. It is to the interest of the life tenant, because property which was, before the date of the decree in *Neal* v. *Sullivan, trustee,* 10 Rich. Eq., 276, unpro-

ductive, and, therefore, incapable of paying honest debts, after that decree became productive. Such was the life tenant's desire, and such, no doubt, was the desire of the trustee, when he saw that the law required it—the trustee, who up to the time of the decree had an idea of the trust estate which was utterly untenable.

2. Again, we see no eror as here alleged. Samuel Moore, the donor, did not intend his son, Hewlett S. Moore, to have the title. Every expression in the deed of trust as to the trustee's title directly repudiated his son having title in any event, and his expression itself negatived any title in the plaintiff as his grand-son.

3. Nor do we see that the donor, Samuel Moore, by the terms of his deed, meant otherwise than to require the trustee to hold the title for whoever would be remaindermen. The law by one of its rules executed the use after the death of the life tenant on 6th March, 1902.

4. This exception presents a very interesting question of law. There is no doubt in our minds that if Samuel Moore's deed, made in 1853, had simply placed the title to this tract of land in Thomas J. Sullivan, his heirs and assigns forever, in trust for Hewlett S. Moore for life, and after his death to such child or children as Hewlett S. Moore should have to survive him, then and in that event creditors of Hewlett S. Moore could not by a bill in equity, to which alone Hewlett S. Moore and Thomas J. Sullivan, as trustee, were made parties defendant, have obtained a judgment for the sale of trust lands, when the remainderman was *in esse,* and thereby shut off the rights of such remainderman *in esse,* who was not a party to this action in equity—*Mosely* v. *Hankinson,* 22 S. C., 323. Such a proposition, which looks to the destruction of the rights of a living person without the allowance to him of "his day on Court," is repugnant to our ideas of justice. See citation of authorities in *Moseley* v. *Hankinson, supra,* at page 329. See *LeRoy* v. *City of Charleston,* 20 S. C., 71, where this Court directly passed upon this question, and held that contingent remaindermen must be

made parties.  If there was nothing else in this case, we could hardly entertain the doctrine of *"communis error facit jus,"* or an invocation "of the doctrine governing rules of property."  But it seems to us that there is more in this case than what we have recited already in considering this proposition of appellant.  This deed of trust especially confides to this trustee, Thomas J. Sullivan, as trustee, the right to sell any of the trust property for reinvestment in other property, subject to like trusts and limitations at the instance of the life tenant, Hewlett S. Moore.  Now, while Hewlett S. Moore did not, specifically in writing, directed to Thomas J. Sullivan, as trustee, request a sale of the trust property for reinvestment, yet it was charged in the bill of equity, in the case of *Neal* v. *Sullivan and Moore,* as defendants, "that it was and is now the wish and desire of the said Hewlett S. Moore that his property should be applied to his debts." This bill was taken *pro confesso* against Hewlett S. Moore, and it was not denied in the answer of Thomas J. Sullivan, as trustee.  It was fixed law in this State at the date of the execution of the deed of trust by Samuel Moore in the year 1853, that while such deed could prevent the lien of a judgment at law against such trust property, that creditors could subject the interest of Hewlet S. Moore, the life tenant, to the payment of their debts, so far as the interest and estate of the life tenant could extend.  If the property was in government bonds, the interest thereon would be adjudged applicable to claims of creditors.  So, also, if the property interest of the life tenant was mingled with the interest of other persons, the court of equity would reach it for creditors.  *Rivers* v. *Thayer,* 7 Rich. Eq., 136 ; *Tupper* v. *Fuller,* 7 Rich. Eq., 170 ; *Branch* v. *Glover,* decided in 1830, and found at page 136 of 7 Rich. Eq.  In the eyes of the law, these provisions were incorporated in the deed of trust when executed by Samuel Moore.  And besides, it has been settled for centuries that trustees are amenable to the control of the court of equity in the discharge of their delicate duties.  It is true this trustee was brought into the court of equity, and

although unwilling at first to have any change made in the status of the trust property, yet at his request, at the instance of the court of appeals, he was allowed, as trustee, to sell the trust lands for reinvestment. Herein lies the crucial point in this case; the deed of trust authorized the trustee to sell the whole or any part for reinvestment, with the concurrence of the life tenant. In *Hankinson ads. Moseley, supra,* there was no power of sale vested in the trustee. Here the trustee is allowed to sell. In *Moseley* v. *Hankinson,* the Court ordered the trustee to sell in the absence of said power in the deed creating the trust, without making the contingent remaindermen *in esse* parties; here the Court authorizes and directs the trustee, who has full power to sell by the trust deed, to sell as trustee, in which the life tenant acquiesces. Now, under the trust deed here involved, it is admitted that the donor clothes the trustee with full power to sell the whole trust property for reinvestment; it is sold for reinvestment by the trustee. There is no authority in any one affected by the limitations in the deed of trust to interfere but the *life tenant.* Contingent remaindermen have no power of interference. The plaintiff here admits that if Thomas J. Sullivan, as trustee, had sold with the request of the life tenant, he would have been powerless to interfere. For forty-nine years the life tenant was silent. We overrule this exception.

5. We do not think there was any error as here complained, for the reasons just set forth under exception 4.

6. The views we have expressed under the fourth exception dispose of this the sixth.

7. The views hereinbefore expressed dispose of this exception.

8. We see no force in this exception. Sullivan held the trust property. If changes were made therein by sale or exchange, he held the substituted property as trustee. He was bound to the exercise of good faith and his best judgment both for life tenant and contingent remaindermen.

9 and 10. This proposition is sound law, when cases

which fall within certain bounds are considered; but when a power of sale is provided in a deed of trust, and such power is exercised, the contingent remaindermen cannot complain.

11. We have already, in effect, answered this objection.

12. Under this deed of trust, when there was a power of sale in the trustee with no power in the remainderman to interfere, we do not see that the contingent remainderman was a necessary party.

13. We have already passed upon this exception.

14. There was no dispute as to the testimony—no issue of fact existed. The Judge could, therefore, direct the verdict.

15. We have already passed upon this exception. All the exceptions are overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

Petition for rehearing on the ground that the sale was made by trustee under order of Court and not of his own volition, was refused by following *per curiam* order, filed May 18, 1903:

After careful examination of the petition for a rehearing in this case, the Court is satisfied that no material question either of law or fact has been disregarded or overlooked.

It is, therefore, ordered, that the petition be dismissed, and that the order heretofore granted staying the remittitur be revoked.